UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:13CV863 HEA |
| ) | |
| JOSH P. TOLIN, et al., ) | |
| ) | |
| Defendants, ) | |

# OPINION, MEMORANDUM AND ORDER

This presents itself to the Court on Plaintiff's Motion for Summary Judgment, [Doc. No. 57], and Intervenor Defendant U.S. Bank National Association as Trustee under Pooling and Servicing Agreement dated as of September 1, 2006, MASTR Asset Backed Securities Trust 2006-NC2 Mortgage Pass Through Certificates Series 200's Motion for Summary Judgment, [Doc. No. 62]. Each party each opposes the motion of the other. For the reasons set forth below, Plaintiff's Motion is granted and Intervenor Defendant's Motion is denied.

## Facts and Background

The parties agree that there are no material facts in dispute.

On March 15, 2004, Josh and Kimberly Tolin purchased, as joint tenants, the subject property located at 16609 Clayton Road, Ballwin, Missouri. The Tolins financed the purchase of the subject property with a $277,000 loan from New

Century Mortgage Corporation. The Tolins executed a Deed of Trust to secure the loan on March 15, 2004 and recorded it in St. Louis County on March 29, 2004.

On October 4, 2013, the Court entered an order dismissing Kimberly Tolin from this litigation after she agreed to disclaim any right to, title to, or interest in the proceeds from the sale of the subject property.

On October 3, 2013, the Court entered judgment that:

> "(a) the federal tax liens, described in paragraphs 20 and 21 of the United States' Complaint relating to the federal income tax liabilities of Josh P. Tolin for tax years December 31, 2001, December 31, 2002, December 31, 2004, and December 31, 2006 (paragraph 13 of the complaint), are valid and subsisting liens that attached to all property and rights to property of Josh P. Tolin pursuant to 26 U.S.C. §§ 6321 and 6322, including the parcel of real property at 16609 Clayton Road, Ballwin, Missouri, with the following legal description:
>
>> Lot 356 of WINDING TRAILS PLAT 1, a subdivision of St. Louis County, Missouri, according to the plat thereof recorded in Plat Book 192, Page 12 of the St. Louis County Records; and
>
> (b) the federal tax liens shall be foreclosed against Josh P. Tolin's real property located at 16609 Clayton Road, Ballwin, Missouri, and the property sold pursuant to an order of sale."

The United States' federal tax liens against Josh Tolin, described in the October 3rd judgment arose on the date of each assessment of tax under 26 U.S.C. §§ 6321 and 6322, and attached to the subject real property on those dates. The dates of assessment are as follows:

2001:  06/05/2006 in the amount of $415,618.79

2002: 05/15/2006 in the amount of $155,256.81

2004: 11/21/2005 in the amount of $166,288.71

2006: 11/05/2007 in the amount of $2,380.53

On March 30, 2006, the Internal Revenue Service ("IRS") recorded a notice of federal tax lien in St. Louis County that related to Josh Tolin's unpaid federal income tax liabilities for tax year 2004. On April 15, 2008, the IRS recorded a notice of federal tax lien in St. Louis County that related to Josh Tolin's unpaid federal income tax liabilities for tax year 2001, 2002, and 2006. On March 8, 2006 and again on March 17, 2006, the IRS recorded notices of federal tax lien in St. Louis County relating to Josh Tolin's federal tax liabilities for years 1998 and 2000 in the amount of $199,482.23, which are not at issue here.

On November 25, 2013, the United States and defendant, Missouri Department of Revenue (the "State") filed a joint stipulation concerning their interests in the subject property. According to the joint stipulation between the United States and the State, the State agreed that the United States' interest in the subject property derived from the federal tax lien relating to Josh Tolin's unpaid federal income taxes for tax year 2004 had priority over the States' interest in the subject property. Additionally, the United States and the State stipulated that the State's interest in the subject property derived from state tax liens filed with St. Louis County on May 12, 2006 has priority over the United States interest in the

subject property derived from the federal tax liens relating to Josh Tolin's unpaid federal income taxes for tax years 2001, 2002, and 2006 for which a notice of federal tax lien was filed with St. Louis County on April 15, 2008.

Ocwen is the loan servicer for U.S. Bank as holder of a note secured by the subject property. Ocwen has no interest in the subject real property.

On March 7, 2006, America's Home Mortgage LLC, a mortgage broker, prepared a good faith estimate for Josh Tolin and Kimberly Tolin relating to a potential new loan. Josh Tolin and Kimberly Tolin signed this good faith estimate as "applicants" on March 10, 2006. On March 17, 2006, New Century Mortgage Corporation prepared a good faith estimate, marked as a preliminary estimate, for Josh Tolin and Kimberly Tolin relating to the finance charges of the closing costs in connection with the origination of a potential new loan.

On March 24, 2006, Josh Tolin and Kimberly Tolin completed a uniform residential loan application. The Tolins' loan application indicates that the Tolins requested a loan in the amount of $366,350 in order to refinance. The purpose of the refinance was to "cash-out and consolidate debt."

The Tolins disclosed several liabilities on their loan application, but failed to disclose any unpaid federal tax liabilities.

On March 24, 2006, New Century Mortgage Corporation prepared another good faith estimate, marked as a final disclosure, for Josh Tolin and Kimberly Tolin. This estimate does not include a line item for a title search.

On March 24, 2006, Josh Tolin and Kimberly Tolin executed a Deed of Trust to secure a loan from New Century Mortgage Corporation in the amount of $366,350. The Deed of Trust was not recorded until July 11, 2006.

The H.U.D. Settlement Statement signed by Josh Tolin and Kimberly Tolin shows that the loan was settled on March 24, 2006 and that funds were disbursed on March 29, 2006. The Settlement Statement indicates that $274,409.93 would be used to pay off the Tolins' first mortgage serviced by HomeQ Servicing. An additional $83,005.09 was used for various other settlement charges. According to an earlier draft of the Settlement Statement, those other settlement charges included disbursements to MBNA America, Amex, the State of Missouri for a state tax lien, Sallie Mae, and Capital One Bank. There is no evidence that New Century Mortgage Corporation or the closing agent performed a title search on the subject property before closing on the new loan.

On May 2, 2006, HomeQ Servicing Corporation recorded a Deed of Release in St. Louis County, which was prepared on April 10, 2006, that released the $277,000 loan recorded on March 29, 2004 described in paragraph 2, above.

On July 11, 2006, the Deed of Trust securing the March 24, 2006 loan from New Century Mortgage to the Tolins was recorded in St. Louis County.

On December 8, 2009, New Century Mortgage Corporation recorded an Assignment of Deed of Trust in St. Louis County, which assigned the March 24, 2006 Deed of Trust to U.S. Bank.

On January 7, 2009, a modification agreement was entered into between the Tolins and HomEq Servicing. The agreement increases the unpaid principal balance due from $363,241.22 to $372,338.19. The agreement capitalized delinquent interest, late charges, a negative escrow balance, and corporate advances totaling $9,096.97.

## Discussion

### Summary Judgment Standard

The standard applicable to summary judgment motions is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue

of fact that is material to a judgment in its favor).  Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000); *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, see *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

The parties do not dispute any of the relevant facts. Rather, the only issue in this case is the legal question of which security interest takes priority. The facts clearly establish, and there is no dispute, that Plaintiff recorded its lien prior to U.S. Bank's recording of the 2006 Deed of Trust on the property.

In opposition to the United States' motion for summary judgment on its lien foreclosure claims, U.S. Bank contends that, equitably, it should be subrogated to the position of the original mortgagee. Thus, the dispute between U.S. Bank and the United States hinges upon the question of whether the Bank should be placed in the position of New Century Mortgage Corporation entitling it to a first priority lien.

The "[p]riority [of liens] for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" *Minnesota Dep't of Revenue v. United States,* 184 F.3d 725, 728 (8th Cir.1999) (quoting *United States v. McDermott,* 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993)). According to federal law, "'the priority of a lien depends on the time the lien attached to the property in question and became choate.'" *Id.* at 728 (quoting *Cannon Valley Woodwork, Inc. v. Malton Construction Co.,* 866 F.Supp. 1248, 1250 (D.Minn.1994)). A federal tax lien attaches and becomes "choate" at assessment. *See* 26 U.S.C. §§ 6321 (providing that the consequence of unpaid taxes after assessment is "a lien in favor of the United States upon all property and

rights to property, whether real or personal, belonging to such person"), and 6322 (providing that the lien arises at the time assessment of unpaid taxes is made against delinquent taxpayer). Therefore, the priority of a federal tax lien is based upon the time when the lien is assessed, not when it is filed. *See United States v. Jepsen,* 268 F.3d 582, 584–85 (8th Cir.2001) (holding that a tax assessment creates a lien in favor of the United States on all property and rights to property pursuant to 26 U.S.C. §§ 6321, 6322); *Minnesota Dep't of Revenue,* 184 F.3d at 728 ("The lien arises automatically when the assessment is made and continues until the taxpayer's liability is either satisfied or becomes unenforceable due to the lapse of time."); *Horton Dairy Inc. v. United States,* 986 F.2d 286, 291 (8th Cir.1993) ("Federal law determines choateness and the federal rule is that liens are perfected in the sense that there is nothing more to be done to have a choate lien-when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.") (quoting *United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 89, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963) (internal quotations omitted)).

In this case, the relevant federal tax lien was assessed on November 21, 2005 and the notice of federal tax lien was recorded on March 30, 2006. A competing interest, like that asserted by U.S. Bank, cannot take priority over this assessment unless (1) the interest became choate before the federal tax assessment, *see Minnesota Dep't of Revenue,* 184 F.3d at 728, or (2) U.S. Bank's interest falls

within the statutorily-defined exceptions to the IRS's lien priority order. *See In re Nerland Oil, Inc.* 303 F.3d 911, 916–17 (8th Cir.2002) (citing 26 U.S.C. § 6323.).

U.S. claims it is entitled to equitable subrogation which would allow it to stand in the shoes of the original mortgagee, New Century Mortgage Corporation, because its Deed of Trust was intended, and in fact did, replace the original Deed of Trust.

> The doctrine of equitable subrogation involves "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Kansas City Downtown Minority Dev. Corp. v. Corrigan Assoc. Ltd. Partnership,* 868 S.W.2d 210, 223 (Mo.App.1994)(quoting *State Sav. Trust Co. v. Spencer*, 201 S.W. 967, 969 (Mo.App.1918)). Originally a common law doctrine, subrogation has as its aim the advancement of justice and prevention of injustice. *Id.; Frago v. Sage,* 737 S.W.2d 482, 483 (Mo.App.1987). "Subrogation compels the ultimate payment of a debt by one who, in justice, equity and good conscience, should pay it." *Id.* Although available, subrogation is a fairly drastic remedy and is usually allowed only in extreme cases "bordering on if not reaching the level of fraud." *Landmark Bank v. Ciaravino,* 752 S.W.2d 923, 928 (Mo.App.1988). *See also Anison v. Rice,* 282 S.W.2d 497 (Mo.1955) (granting equitable subrogation where lender advanced money to pay off first deed of trust under threat of foreclosure at request of one joint owner where payment by lender benefitted equally the other joint owner); *Bunn v. Lindsay*, 95 Mo. 250, 7 S.W. 473 (1888) (refusing to allow equitable subrogation where lender provided money necessary to pay off first deed of trust and was unaware of intervening judgment lien of record and where judgment was recorded in public records and debtor failed to search public records because "a court of equity cannot relieve him by interfering with the legal rights of others who are without fault"); *State Sav. Trust Co.,* 201 S.W. at 967 (determining equitable subrogation was appropriate where borrower obtained money from lender through the use of forged instrument and where superior liens were no worse off than they were before subsequent lender advanced his money to retire senior lien); *Baker v. Farmers' Bank of Conway*, 220 Mo.App. 85, 279 S.W. 428 (1926) (granting equitable subrogation where lender paid off three deeds of trust with understanding it would become first lien and where holder of fourth lien refused

to subordinate its security). A party seeking equitable subrogation must prove by clear and convincing evidence that equity requires another party to bear the loss. *Corrigan*, 868 S.W.2d at 223; *Frago,* 737 S.W.2d at 483.

*Metmor Financial, Inc. v. Landoll Corp.*, 976 S.W.2d 454, 461 -462 (Mo.App. W.D., 1998).

The Restatement of Property concisely states the rule of law applied in Missouri case law: "If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except ... to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate." RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES Section 7.3 (1997).

*Golden Delta Enterprises, L.L.C. v. US Bank*, 213 S.W.3d 171, 176 (Mo.App. E.D., 2007).

The fatal fact in the U.S. Bank scenario is that the subsequent Deed of Trust was *not* part of the same transaction. Indeed, the March 29, 2004 loan was released on May 2, 2006; the second loan was not recorded until July 11, 2006, more than two months after the release. Such timing cannot fit within the perimeters of "simultaneous" nor is it the "same transaction," in spite of U.S. Bank's attempt to characterize the gap of time as "essentially contemporaneously" with the execution of the second loan. Because the exception to the "first in time first in right" rule hinges on equitable principles, those principles must be adhered to carefully and without expansion. Upon the release of the March 29, 2004 loan

on May 2, 2006, there no longer existed a lien on the property based on the loan and the later filing on July 11, 2006 cannot revive a released lien.[1]

Moreover, the other requirements of equitable subrogation have not been met. The new loan included an additional $83,005.09 in debt in order to pay other creditors of the Tolins. It was not merely a "refinance" of the older loan. U.S. Bank's lien therefore is subordinate to the United States' 2004 tax lien, as well as the State's tax liens.

## **Conclusion**

Based on the above, the Court concludes that the United States' 2004 tax lien has priority over the State's, Ocwen's and U.S. Bank's interest in the subject property.

Accordingly,

**IT IS HEREBY ORDERED** Plaintiff's Motion for Summary Judgment, [Doc. No. 57] is granted.

**IT IS FURTHER ORDERED** that Intervenor Defendant U.S. Bank's Motion for Summary Judgment, [Doc. No. 62], is denied.

**IT IS FURTHER ORDERED** that the proceeds from the sale of the subject property shall be distributed as follows:

---

[1] The court can only note that if this were a game of horseshoes perhaps the result would be different. However, this is not a game of horseshoes and equity demands compliance with equitable principles.

First, to the United States to satisfy the unpaid federal income tax liability of Josh Tolin for tax year 2004. If Tolin's 2004 federal income tax liability, including interest and penalties, is fully satisfied and proceeds remain, then

Second, to the State to satisfy the unpaid individual state income tax liabilities of Josh Tolin for tax years 2001, 2002, 2003, and 2004. If Tolin's state income tax liabilities for 2001, 2002, 2003, and 2004 are fully satisfied and proceeds remain, then

Third, to U.S. Bank to satisfy the March 26, 2004 loan. If the March 26, 2004 U.S. Bank loan is fully satisfied and proceeds remain, then

Fourth, to the United States to satisfy the unpaid federal income tax liabilities of Josh Tolin for tax years 2001, 2002, and 2006. If Tolin's federal income tax liabilities for 2001, 2002, and 2006, including interest and penalties, are fully satisfied and proceeds remain, then

Fifth, to Josh P. Tolin.

A separate judgment in accordance with the Opinion, Memorandum and Order is entered this same date.

Dated this 30th day of March, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE